*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 5, 2015                    105528
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

KENNETH M. BRABHAM, Also Known
    as SKEET,
                        Appellant.
_____


Calendar Date:  January 15, 2015

Before:  Lahtinen, J.P., Garry, Devine and Clark, JJ.

                        _____


        John R. Trice, Elmira, for appellant, and appellant
pro se.

        Gerald F. Mollen, District Attorney, Binghamton (Brian
Leeds of counsel), for respondent.


                        _____


Garry, J.

        Appeal from a judgment of the County Court of Broome County
(Cawley, J.), rendered September 12, 2012, upon a verdict
convicting defendant of the crimes of burglary in the first
degree, attempted assault in the first degree and assault in the
second degree.

        Defendant and several other men allegedly entered the
victim's apartment without permission and assaulted him.
Defendant was indicted for burglary in the first degree,
attempted assault in the first degree and assault in the second
degree.  He was convicted as charged by a jury and sentenced to
an aggregate prison term of 15 years followed by five years of

postrelease supervision.  Defendant appeals.

Defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence, asserting that the witness testimony against him was not credible.  Defendant moved to dismiss the charges on this ground at the close of the People's case, but he did not renew the motion following the close of all proof.  Although his legal sufficiency claim is therefore unpreserved (see People v Lane, 7 NY3d 888, 889 [2006]; People v Santiago, 118 AD3d 1163, 1164 [2014], lv denied 24 NY3d 964 [2014]), defendant's claim that the verdict was against the weight of the evidence requires this Court to examine the sufficiency of the evidence of each element of the crimes (see People v Rowe, 105 AD3d 1088, 1090 n 2 [2013], lv denied 21 NY3d 1019 [2013]; People v Mitchell, 94 AD3d 1252, 1253 n [2012], lv denied 19 NY3d 964 [2012]).

The victim testified that he and defendant's paramour were in his apartment when several men burst through the door, including defendant, who was holding a gun.  Defendant and the other men beat the victim with various objects, including a wooden rod or staff, an end table, a propane tank and a hard object that the victim believed to be the butt of defendant's gun.  The victim testified that he crouched face down on his bed during most of the assault, trying to protect himself and his dog, but looked up once to see defendant – whom he had previously met several times – hitting him in the head with the end table.  Another assailant hit him repeatedly with the rod, fracturing one of his fingers.  The rod and the end table, both of which were broken during the attack, were admitted into evidence at trial.  The victim testified that the assault continued for about 20 minutes until one of the men said, "[H]e's leaking good, let's get out of here," at which point the men left the apartment, taking the paramour with them.  When the victim left the apartment in search of assistance, he saw four men "dragging" the paramour away.  He later identified defendant from a photograph, but could not identify the other assailants.

In addition to the broken finger, the victim sustained multiple contusions and a laceration on his head, additional contusions on his face, back, arms and hands, shoulder injuries

and a large swollen bruise on his arm.  He received medical treatment that included stitches for the head wound, a sling for the injured arm and physical therapy for the shoulder.  He did not regain full use of his arm for several months and, at the time of trial, was still unable to move the broken finger.

The victim and the paramour both testified that defendant had previously warned them that the paramour was not allowed to enter the victim's apartment; according to the victim, defendant said during the assault, "[I] told you not to let [the paramour] come in here."  The paramour was reluctant to testify because of her relationship with defendant, and did so only after she was incarcerated pursuant to a warrant for her arrest as a material and necessary witness.  She confirmed the victim's testimony in part, stating that she was present when defendant and three other men entered the apartment without permission.  She testified that defendant had a gun, one of the other men had a "stick" and the other three men beat the victim, but she stated that defendant removed her from the apartment when the assault began and that she did not see him strike the victim.

Defendant challenges the credibility of the victim and the paramour, pointing to such inconsistencies in their statements as the conflict between the victim's claim that defendant participated in the assault and the paramour's claim that he did not do so.  Defendant argues that the victim was unworthy of belief because of his extensive criminal record and longstanding history of drug abuse, and he challenges the credibility of the paramour based upon her history of prostitution and drug abuse, prior convictions for these activities and testimony that she had previously traded sex for drugs with the victim.  As defendant contends, the victim's initial statements to police did not include his later claims that defendant had a gun and that the victim was struck with a propane tank.  Moreover, the victim acknowledged that he and the paramour had smoked crack together in his apartment on the night before the assault, that he continued to abuse drugs thereafter, and that he had last smoked crack only a few days before the trial.  However, he testified that he was not under the influence of drugs when the assault occurred nor at trial, and a police officer testified that the victim was able to communicate clearly after the assault.

There were other inconsistencies in the victim's testimony, such as his testimony at one point that three men entered the apartment and at another point that the number was between two and four. However, we reject defendant's argument that these issues — all of which were thoroughly explored on cross-examination — rendered the testimony unworthy of belief. The testimony was not contradicted by any other compelling evidence and cannot be considered incredible as a matter of law (see People v Cridelle, 112 AD3d 1141, 1143 [2013]; People v Moyer, 75 AD3d 1004, 1006 [2010]). Instead, the conflicts and inconsistencies in the testimony created "classic credibility issue[s] for the jury to resolve" (People v Mitchell, 57 AD3d 1308, 1309 [2008] [internal quotation marks and citation omitted]; accord People v McCray, 102 AD3d 1000, 1004 [2013], affd 23 NY2d 193 [2014]). Viewing the evidence in a neutral light and according deference to the jury's credibility assessments, the verdict is supported by the weight of the evidence as to all of the charged crimes (see People v Mateo, 101 AD3d 1458, 1459-1460 [2012], lv denied 21 NY3d 913 [2013]; People v Dove, 89 AD3d 1153, 1153-1154 [2011], lv denied 18 NY3d 957 [2012]; People v Elliot, 299 AD2d 731, 733 [2002]).

Defendant's representation at trial did not constitute the ineffective assistance of counsel. As he contends, his counsel's arguments in the trial motion to dismiss and in summation that the victim did not sustain serious physical injury were misguided, as no such showing is required to prove attempted assault in the first degree (see People v Daniels, 97 AD3d 845, 847 [2012], lv denied 20 NY3d 931 [2012]; People v Gray, 30 AD3d 771, 773 [2006], lv denied 7 NY3d 848 [2006]). Moreover, defense counsel was unsuccessful in using a defense witness to impeach defendant's testimony as to the number of assailants because he had not established the necessary foundation, although he did impeach the victim's testimony through other means (compare People v Rodriguez, 48 AD3d 312, 312 [2008], lv denied 10 NY3d 939 [2008]).

"The Constitution guarantees a defendant a fair trial, not a perfect one," and isolated errors do not ordinarily constitute ineffective assistance unless they are so grievous as to amount to a deprivation of the constitutional right to a fair trial

(People v Henry, 95 NY2d 563, 565-566 [2000] [citation omitted]; see People v Shuaib, 111 AD3d 1055, 1057 [2013], lv denied 24 NY3d 1046 [2014]).  The cited errors were not so egregious as to rise to that level, and defendant's remaining challenges to his counsel's performance do not establish ineffective assistance. Defendant claims that his counsel should have objected to certain allegedly improper remarks during the prosecutor's summation, but we find nothing in the challenged comments that was "so prejudicial to defendant as to render counsel's failure to object to them evidence of ineffective assistance of counsel" (People v Albanese, 38 AD3d 1015, 1019 [2007], lv denied 8 NY3d 981 [2007]; accord People v Fisher, 89 AD3d 1135, 1139 [2011], lv denied 18 NY3d 883 [2012]).

The issues raised in defendant's pro se brief with regard to counsel's failure to obtain fingerprints or object to the manner in which defendant was transported to court involve matters outside the record that are more properly addressed in a motion pursuant to CPL article 440 (see People v Carlton, 120 AD3d 1443, 1445 [2014]; People v Willi, 80 AD3d 884, 885 [2011], lv denied 16 NY3d 900 [2011]).  Defense counsel made appropriate motions and evidentiary objections, pursued a reasonable theory of defense, cross-examined witnesses effectively and presented cogent opening and closing statements.  Viewing the record as a whole, we find that defendant received meaningful representation (see People v Green, 108 AD3d 782, 786 [2013], lv denied 21 NY3d 1074 [2013]; People v Race, 78 AD3d 1217, 1221 [2010], lv denied 16 NY3d 835 [2011]).

Finally, we reject defendant's contention that his sentence, which was less than the maximum that he could have received, was harsh and excessive.  In view of defendant's criminal history and the violent nature of his actions, we perceive no abuse of discretion or extraordinary circumstances warranting a modification (see People v Burgette, 118 AD3d 1034, 1035 [2014], lv denied 24 NY3d 961 [2015]; People v Jones, 114 AD3d 1080, 1082 [2014], lv denied 24 NY3d 961 [2014]). Defendant's remaining contentions, including those in his pro se brief, have been reviewed and found to be without merit.

Lahtinen, J.P., Devine and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court